**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KELLEY COLVIN,**

     **Petitioner,**

                                **Civil No: 03-71172-DT
                                HONORABLE PAUL D. BORMAN**
**v.                                     UNITED STATES DISTRICT COURT**

**HUGH WOLFENBARGER,**

     **Respondent.**
_____

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS
CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO
APPEAL IN FORMA PAUPERIS**

     Kelly Colvin, ("petitioner"), presently confined at the Macomb Correctional

Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for two

counts of felony murder, M.C.L.A 750.316(1)(b), and one count of possession of a

firearm during the commission of a felony, M.C.L.A. 750.227b.  For the reasons stated

below, the petition for writ of habeas corpus is **DENIED.**

**I.  BACKGROUND**

     Petitioner was convicted of the above offenses following a jury trial in the Kent

County Circuit Court. [1]  His co-defendant, Kenneth Colvin, was tried separately.

_____

    [1] Petitioner was also convicted of armed robbery, but this conviction was later vacated by the Michigan
Supreme Court on petitioner's post-conviction appeal on double jeopardy grounds.

On June 24, 1994, shortly before noon, Kenneth Smith, Cassandra Tillman, John Earl Smith, Christopher Smith, Ernest Barnes, Aaron Williams, and Jacqueline Smith were in a residence located at 844 Neland S.E. in Grand Rapids, Michigan.  Two gunmen approached the residence, knocked on the door and were told to "come in" by John Earl Smith.  Upon entering the home, the two gunmen immediately announced their intention to steal money from the premises.  One of the gunmen shot and killed Kenneth Smith and Cassandra Tillman.  The other gunman went upstairs where he shot and wounded Christopher Smith, Aaron Williams and Jacqueline Smith.  Ernest Barnes managed to escape from the home through the kitchen and out of the back door before any harm came to him.  The tenor of the trial testimony indicates that the gunmen were motivated to commit this robbery because they learned that Ernest Barnes recently won $ 7,700.00 in a lottery game.

The gunman that shot Kenneth Smith and Cassandra Tillman then proceeded to threaten John Earl Smith by pointing a gun to his head and walking him into the kitchen, where Ernest Barnes was located before he fled.  John Earl Smith testified that he was hoping Mr. Barnes had some of his lottery winnings with him so that he could give the gunman some of it, in the hope that the gunmen would leave without shooting anyone else.  However, when the two men got to the kitchen, Mr. Barnes was gone.  There was, however, a large bowl of marijuana in the kitchen.  John Earl Smith gave it to one of the gunman, who took the marijuana and fled the scene.  John Earl Smith testified that the other gunman was still upstairs shooting.  Smith was able to escape from the house and

2

contacted a neighbor to call an ambulance to the residence.

The prosecution's theory in this case was that petitioner was the gunman who killed Cassandra Tillman and Kenneth Smith and the gunman who wounded the three individuals upstairs in the Neland residence was petitioner's brother, Kenneth Colvin. John Earl Smith testified that he gave the police a description of the gunman who killed Kenneth Smith and Cassandra Tillman. A composite was put together. John Earl Smith showed the composite to his cousin, who immediately recognized the person in the composite sketch to be the likeness of the petitioner. The cousin knew where petitioner spent a lot of time and took John Earl Smith to an area between Barth and Sigsbee Street. John Earl Smith immediately recognized petitioner as the individual who shot and killed Kenneth Smith and Cassandra Tillman and contacted the police. In July 1994, John Earl Smith positively identified petitioner at a police line-up as the person who shot Kenneth Smith and Cassandra Tillman. Christopher Smith was unable to identify either of the gunmen. Jacqueline Smith never saw the gunman who shot Kenneth Smith and Cassandra Tillman, and therefore did not participate in this line-up. Aaron Williams, also did not see the gunman who shot Kenneth Smith and Cassandra Tillman, and was not able to identify him as one of the shooters in a line-up. However, at trial both Aaron Williams and Jacqueline Smith testified that Kenneth Colvin was the individual that shot them. Finally, Ernest Barnes did not see either of the gunmen and therefore did not make an identification in this case.

After petitioner had been identified by John Earl Smith in the line up, petitioner

3

was interviewed about the shooting incident by Officers Rex Marks and Gary Crum of the Grand Rapids Police Department.  Petitioner confessed to the police officers that he and his brother, Kenneth Colvin, went to the home on Neland Street and announced that this was a "stick-up."  Petitioner thought that Kenneth Smith was reaching for a gun, and after hearing a bang sound, petitioner shot Kenneth Smith.  Petitioner then shot Cassandra Tillman.  Petitioner told the police that he was given a bowl of marijuana by some occupants of the Neland house and he and his brother left the premises.  Petitioner described his gun as being a .38 "lemon squeeze" gun and his brother's gun as being a .32 automatic.  The guns used in the shooting were disposed of by Kenneth Colvin, however, petitioner's gun was recovered by police from a man named Kenneth Carter on July 31, 1994.

Petitioner testified that he went to the Neland home in order to purchase marijuana, but he denied being there on June 24, 1994.  Petitioner further stated that his brother, Kenneth Colvin, and another individual committed the shootings at the Neland residence. Petitioner admitted that one of the guns used in the shooting belonged to the him, as Kenneth Colvin has previously borrowed the weapon.  Petitioner indicated that he knew what had taken place at the Neland residence, because his brother had told him the details about what happened at the Neland house during a car ride from Grand Rapids to Detroit. Petitioner testified that he was apprehensive about making this statement due to his fear of jail time and because an individual named "Red" would kill him if he told the truth.

Petitioner's convictions and sentences were affirmed on appeal. *People v. Colvin,*

4

No. 184014 (Mich. Ct. App. December 20, 1996).  Petitioner never filed an application

for leave to appeal to the Michigan Supreme Court.

Petitioner claims that on or about September 20, 2000, he obtained new evidence

which would have served as a basis for overturning his conviction.

On or about December 18, 2000, Petitioner filed a motion for relief from judgment

pursuant to M.C.R. 6.500, *et. seq.*  Petitioner's motion was denied by the trial court on

April 24, 2001 pursuant to MCR 6.504(B)(2) and MCR 6.508(D)(3)(a),(b).  The

Michigan Court of Appeals denied petitioner's application for leave to appeal. *People v.*

*Colvin,* No. 234665 (Mich.Ct. App. September 17, 2001).  On January 28, 2003, the

Michigan Supreme Court reversed petitioner's armed robbery conviction on double

jeopardy grounds and denied the application on all of the remaining issues. *People v.*

*Colvin,* 467 Mich. 944; 655 N.W.2d 764 (2003).

On April 1, 2003, petitioner filed his application for writ of habeas corpus, in

which he sought habeas relief on the following grounds:

> I.  Defendant's conviction should be reversed because his statement to law
> enforcement officials was unreliable and inadmissible.
>
> II.  A criminal defendant has a constitutional right to the compulsory
> process of having *res gestae* witnesses in his defense.
>
> III.  The prosecutor and investigating officers withheld evidence that is
> exculpatory or that could impeach the prosecutor's witnesses, thus denying
> a fair trial.
>
> IV.  A criminal defendant has a constitutional right to have effective
> assistance of trial counsel.

V.  A criminal defendant has a constitutional right to have effective assistance of counsel on an appeal of right.

VI.  Prosecutor committed prosecutorial misconduct when he made improper comments during closing arguments, not listing all *res gestae* witnesses, allowing witnesses to testify falsely, not turning over documents (exculpatory and impeachment) to defense under the *Brady* rule, thus violating defendant's right to a fair trial.

VII.  The cumulative effect of the errors denied defendant a fair trial.

On November 7, 2003, respondent filed a motion for summary judgment and dismissal of petitioner's writ of habeas corpus citing statute of limitations grounds.  On June 29, 2004, this Court entered an order denying respondent's motion, finding that respondent failed to carry his burden of showing that the statute of limitations had run. *Colvin v. Wolfenbarger,* No. U.S.D.C. 03-CV-71172-DT (E.D. Mich. June 29, 2004).

On August 26, 2004, Respondent filed his response to petitioner's writ for habeas corpus.  On October 15, 2004, Petitioner filed his reply brief.

## II.  STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  DISCUSSION

#### A.  The statute of limitations issue.

Respondent contends that several of petitioner's claims in his habeas petition are statutorily barred because the petition was filed more than one year after these claims accrued. Respondent concedes that some of petitioner's claims should survive the statute of limitations defense because the claims arose from newly discovered evidence, which provides a later filing deadline pursuant to 28 U.S.C. § 2244(d)(1)(D). However, respondent argues that petitioner's claims which are not based on this newly discovered evidence are untimely, because they were not filed within one year of petitioner's conviction becoming final on February 17, 1997. Respondent contends that the provisions of § 2244(d)(1)(D) should be applied on a claim-by-claim basis, rather than to

7

the habeas application as a whole.  Under this argument, respondent contends that any of

petitioner's claims that are not based on newly discovered evidence are time-barred.

Under 28 U.S.C. § 2244(d)(1), the one year period for filing a federal habeas

application runs from the latest of.

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time judgment became final by the
> conclusion of direct review or the expiration of the time for seeking such
> review;
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution of laws of the United States is
> removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court if the right has been newly recognized
> by the Supreme Court and  made retroactively applicable to cases on
> collateral review; or,
> (D) the date on which the factual predicate of the claim or claims presented
> could have been discovered through the exercise of due diligence.

A federal court will dismiss a case where a petitioner for a writ of habeas corpus

does not comply with the one year statute of limitations. *See Wilson v. Birkett*, 192 F.

Supp. 2d 763, 765 (E.D. Mich 2002).

In the present case, the Michigan Court of Appeals affirmed petitioner's

conviction on December 20, 1996.  Under M.C.R. 7.302(C)(3), petitioner had fifty six

days to file a delayed application for leave to appeal with the Michigan Supreme Court.

*Rice v. Trippett*, 63 F. Supp. 2d 784, 787 (E.D. Mich. 1999).  Because petitioner did not

file an application for leave to appeal with the Michigan Supreme Court, his conviction

became final, for purposes of the AEDPA's statute of limitations, on February 14, 1997,

fifty six days after the Michigan Court of Appeals affirmed his conviction. *See Brown v.*

8

*McKee,* 232 F. Supp. 2d 761, 765 (E.D. Mich. 2002); *Erwin v. Elo,* 130 F. Supp. 2d 887, 889 (E.D. Mich. 2001). [2]  As respondent correctly noted in the motion for summary judgment, petitioner therefore had until February 14, 1998 to file a petition for writ of habeas corpus with the Court, unless the one year limitations period was somehow tolled.  Respondent is also correct that petitioner's post-conviction motion for relief from judgment, which was filed in the state trial court on December 18, 2000, did not toll the limitations period, because it was filed following the expiration of the limitations period for filing the petition for a writ of habeas corpus. *See e.g. Fugate v. Booker,* 321 F. Supp. 2d 857, 860 (E.D. Mich. 2004).

The Court originally denied respondent's motion for summary judgment, finding that the one year limitations period did not commence pursuant to 28 U.S.C. § 2244(d)(1)(D) until September of 2000, when petitioner contended that he acquired newly discovered evidence which supported several of his claims.  Because petitioner filed his post-conviction motion within three months of discovering this new evidence, and because he filed his federal habeas petition within two months of the completion of his state post-conviction proceedings, this Court found the petition to be timely.

The question for this Court is whether the provisions of § 2244(d)(1)(D) should

_____

[2] Normally, the one year statute of limitations does not  begin to run until the ninety day time period for filing a petition for writ of certiorari in the United States Supreme Court has expired. *See Bronaugh v. Ohio,* 235 F. 3d 280, 283 (6th Cir. 2000).  In this case, however, Petitioner would not be entitled to have the ninety day time period for seeking a writ of certiorari added to the calculation of the limitations period, because his failure to file a timely application for leave to appeal to the Michigan Supreme Court divested the U.S. Supreme Court of jurisdiction to grant a writ of certiorari. *See Eisermann v. Penarosa,* 33 F. Supp. 2d 1269, 1272-73, n. 5 (D. Hawaii 1999)(citing to *Flynt v. Ohio*, 451 U.S. 619 (1981); *Street v. New York*, 394 U.S. 576 (1969).

be applied on a claim-by-claim basis, rather than to the habeas application as a whole. Under this argument, respondent contends that any of petitioner's claims that are not based on newly discovered evidence are time-barred.

In *Fielder v. Varner,* 379 F. 3d 113, 117-21 (3rd Cir. 2004), the Third Circuit held that the AEDPA's statute of limitations should be applied on a claim-by-claim basis, and not to the application as a whole with the latest accruing claim governing the commencement of the one year limitations period, notwithstanding the fact that the statute refers to a period within which "an application," rather than a "claim" must be filed. The Third Circuit reasoned that interpreting the statute as applying to the petition as a whole, and allowing the latest accruing claim to govern, would permit a late accruing claim to open the door for the assertion of other claims that had become time-barred years earlier. *Id.* The Third Circuit held that 28 U.S.C. § 2244(d)(1)(D) would not render timely any claims whose factual basis had been known to the habeas petitioner many years earlier. *Id.* at 122. In so holding, the Third Circuit disagreed with the Eleventh Circuit's decision in *Walker v. Crosby,* 341 F. 3d 1240 (11th Cir. 2003), which held that § 2244(d)(1)(D) renders the entire application timely. However, at least one other court has held that a federal district court must assess the timeliness of an inmate's claims under Section 2244(d)(1)(D) on a claim-by-claim basis. *See Murphy v. Espinoza,* 401 F. Supp. 2d 1048, 1052 (C.D. Cal. 2005).

The Supreme Court has not specifically addressed whether the provisions of 28 U.S.C. § 2244(d)(1)(D) should be applied to the entire habeas application or decided on

10

a claim-by-claim basis.  However, in dicta in *Pace v. DiGuglielmo,* 125 S. Ct. 1807, 1813, n. 6 (2005), the Supreme Court indicated that § 2244(d)(1) provided one means of calculating the limitation period with regard to the "application" as a whole, namely, § 2244(d)(1)(A)(date of final judgment), but noted that the three other subsections, § 2244(d)(1)(B), § 2244(d)(1)(C); and § 2244(d)(1)(D), required a claim-by-claim consideration for calculating the limitations period.

The Sixth Circuit likewise has not addressed this issue directly.  However, in *Alley v. Bell,* 392 F. 3d 822, 829-30 (6th Cir. 2004), *rehearing granted,* 405 F. 3d 371 (6th Cir. 2005), the Sixth Circuit held that a claim-by-claim approach should be used when deciding whether the limitation on the filing of successive habeas petitions in 28 U.S.C. §2244(b) applies.

In light of the *Pace, Alley, Fielder, and Murphy* decisions, the Court finds that the timeliness of petitioner's application should be evaluated on a claim-by-claim basis. Accordingly, any claims that were not filed in a timely fashion will remain time barred despite the fact that they are included in a petition that has claims that survive the statutory bar.

In his first claim, petitioner asserts that his confession was allegedly coerced and should have been suppressed.  The record bears out that petitioner knew about this claim prior to receiving any new evidence in September, 2000, because he raised it as an issue on appeal to the Michigan Court of Appeals in February, 1996.  28 U.S.C. § 2244(d)(1)(D) does not save this claim because the factual basis for the alleged

11

inadmissible statements was known to the petitioner many years earlier and prior to any newly discovered evidence. Accordingly, petitioner's claim that his statement should not have been admitted into evidence as a basis for overturning his conviction is dismissed pursuant to 28 U.S.C. § 2244(d) as being time-barred.

In his fifth claim, petitioner alleges that he was deprived of the effective assistance of appellate counsel. Petitioner alleges that his appellate counsel was ineffective in the following manner: (1) failed to set forth all of the details regarding petitioner's interrogation by the police; (2) failed to investigate *res gestae* witness; (3) failed to obtain discovery from trial counsel; (4) made an inaccurate factual argument in the appellate brief regarding the identification of petitioner as one of the shooters; (5) failed to obtain the *Brady* material; and (6) failed to obtain police procedure policy manuals relative to interrogations.

In determining whether this claim is time barred, this Court should focus on when petitioner knew or should have known the factual predicate of his ineffective assistance of appellate counsel claim. *See Powell v. Williams*, 981 F. Supp. 1409, 1412 (D.N.M. 1997). With the exception of petitioner's *Brady* claim, which is based upon newly discovered evidence, petitioner should have been aware of the factual predicate of his ineffective assistance of appellate counsel claims no later than when his conviction was affirmed on appeal in 1996. Therefore, with the exception of petitioner's *Brady* claim, petitioner's remaining ineffective assistance of appellate counsel claims are dismissed

12

pursuant to 28 U.S.C. § 2244(d) as being barred by the one year statute of limitations.

In his sixth claim, petitioner alleges that the prosecutor in his case committed several acts which constituted prosecutorial misconduct: (1) improper statements made during closing arguments; (2) failure to list all *res gestae* witnesses; (3) suborning perjury; and (4) violation of petitioner's right to a fair trial.  With regards to the prosecutorial misconduct allegations raised in petitioner's sixth claim, Section 2244(d)(1)(D) does not render them timely, because petitioner was aware of these claims at the time of his trial. *Fielder,* 379 F. 3d at 122.  Accordingly, petitioner's sixth claim is dismissed pursuant to 28 U.S.C. §. 2244(d).

With regards to petitioner's remaining claims, respondent has conceded that these claims are timely pursuant to 28 U.S.C. § 2244(d)(1)(D), because they are based upon newly discovered evidence.  Accordingly, the Court will review the remaining claims on the merits.

**B.  Claims # 2 and # 3.  The exculpatory evidence claims.**

The Court will consolidate petitioner's second and third claims because they are interrelated.  Petitioner claims that he has newly discovered evidence which is exculpatory which was improperly withheld by the prosecutor and/or investigating officers.  Since the pleadings before the Court indicate that these claims are based upon the newly discovered evidence which was allegedly revealed in 2000, the Court does not find that this claim is statutorily barred pursuant to 28 U.S.C. § 2244 (d)(1)(D). *Fielder,*

13

379 F. 3d at 122.

As an initial matter, to the extent that petitioner claims that the prosecutor violated M.C.L.A. 767.40a; M.S.A. 28.980 (1) by failing to produce certain *res gestae* witnesses for trial, petitioner is not entitled to habeas relief on this claim, because issues of state law are not cognizable in federal habeas review and federal law does not require the production of *res gestae* witnesses. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Id.* (Citing *Atkins v. Foltz*, 856 F. 2d 192, 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988)).  The only question for this Court is whether the prosecution withheld exculpatory evidence.

To prevail on this issue, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).

In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated  three components or essential elements of a *Brady* claim: (1) the evidence at

14

issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

Respondent contends that petitioner's claims are procedurally defaulted, because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).  Petitioner, however, claims that the police withheld this evidence from him.  "[C]ause and prejudice" in this case " parallel two of the three components of the alleged *Brady* violation itself." *Strickler,* 527 U.S. at 282.  Corresponding to the second *Brady* component, a petitioner shows "cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the compass of the "cause and prejudice" requirement exists when the suppressed evidence is "material" for *Brady* purposes. *Id.*

Petitioner sets forth several grounds to support his claim.  First, petitioner claims that the 911 transcript was necessary in order to obtain information regarding callers who gave identification information about the shooters, the names of the officers who first arrived on the scene, when those officers arrived on the scene and any information obtained from the hospitals to which the shooting victims were transported.  However, petitioner fails to indicate the specific content of the information nor how this

information is exculpatory or otherwise material to his conviction in this case.  Petitioner also argues that there are some lottery documents that show Ernest Barnes did not win money in a lottery game.  However, petitioner fails to articulate how this information is exculpatory or otherwise material to petitioner's guilt.  Whether or not there were lottery winnings does not negate the fact that the shooting took place during an attempt to rob the occupants, nor does it preclude the theory that petitioner committed the criminal offenses with which he is charged.

The primary allegedly exculpatory evidence petitioner claims was withheld is attached as exhibits to the "tip sheet" which is part of his petition.  First, there is a July 5, 1994 statement from Calvin Jones, who was an inmate at Kent County Jail.  Mr. Jones was serving jail time for a probation violation relative to an unrelated drug charge.  The report indicates that Mr. Jones was not cooperative with the police at first.  Mr. Jones was also reluctant to tell the police what he had been told.  Mr. Jones finally stated that while he was incarcerated, Terron Johnson [3] admitted to him that he (Terron Johnson) shot Cassandra Tillman and Kenneth Smith on June 24, 1994 at the Neland residence.  He also told Calvin Jones that he had an accomplice named "Skeeter."

Second, there is a July 1, 1994 statement from Willie Meadows who was also an inmate in Kent County Jail.  Mr. Meadows was serving a sentence for maintaining a drug house.  Mr. Meadows stated that he overheard Terron Johnson "bragging" to Calvin

---

[3] Terron Johnson's name is spelled several different ways throughout the record.

Jones that he (Terron Johnson) robbed the individuals that were in the Neland residence along with his accomplice whose name is "Skeeter."

Third, Carolyn Glasper knows Terron Johnson and said in her statement that on the day in question, Mr. Johnson and his friend "Things" (Thames Hawkins) were acting nervously. Ms. Glasper stated that she thought they had committed another robbery, as Mr. Johnson and "Things" were known for committing robberies in the neighborhood and bragging about it. She also stated that she heard they shot someone on Neland.

Fourth, there is July 5, 1994 statement from Marlon Babers, who was another inmate in Kent County Jail. He stated that he heard from "Ernest" that an individual named Cody Johnson committed the Neland robbery along with another individual named "Skeeter."

Fifth, there is a statement from the grandmother of Marlon Babers who is a resident in the Neland neighborhood. She stated that she saw the suspects flee from the house and that one of the perpetrators matched the description of an individual named Cody Johnson.

Sixth, there is a notation in the file authored by Detective Grable, dated July 8, 1994, stating that Aaron Williams identified Mr. Hawkins as being the individual that he thinks shot him. This notation contradicts Mr. Williams' trial testimony, at which time he identified Kenneth Colvin as the shooter.

Seventh, there are notes authored by Detective Grable which state that Jacqueline

17

Smith looked at Mr. Hawkins for identification in a line-up, at which time she stated that he "looked a lot like the guy," although she thought he may have been too short.  At trial, Jacqueline Smith identified Kenneth Colvin as the individual who shot her.

Eighth, there is a statement from a thirteen year old witness, Amy Pettaway, who stated that she saw two men flee the Neland residence after she heard shots.  She further testified that although she could not identify these individuals by name, she did know that she had seen them in the area before (i.e., locals) and she proceeded to give a physical description of the perpetrators.

Finally, there are statements from Carl Powell and Trent Chambliss which the petitioner relies upon in support of his position that the weapons used in the Neland shooting were not in his possession at the time of the shooting.  Petitioner asserts that there was some information and witness testimony relative to another shooting on Fair Street; and that evidence of laboratory testing results regarding the Neland shootings and the unrelated Fair Street shooting would serve as exculpatory evidence.

In the present case, the primary evidence against petitioner was John Earl Smith's positive identification of petitioner as the person who shot Kenneth Smith and Cassandra Tillman, petitioner's confession, and a ballistics match to the type of gun petitioner owned to one of the guns that was used in the Neland shooting.  Although petitioner contested at trial and disputes to date the legitimacy of his statement to the police, John Earl Smith's identification against petitioner, in conjunction with his confession, is very

18

compelling evidence of guilt.

This Court first notes that there is "[n]o constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case," even where the police investigation uncovers evidence of other suspects. *See Moore v. Illinois*, 408 U.S. 786, 795 (1972). Rather, the crucial inquiry is whether such evidence would have exculpated petitioner of the crime.

In the present case, the Court concludes that the disclosure of this evidence to petitioner would not have exculpated petitioner of this crime. First, Carolyn Glasper's statement that she heard that Johnson and "Things" had shot someone on Neland, and Marlon Babers' statement that an inmate named "Ernest" told him that Cody Johnson and "Skeeter" had committed the shooting was inadmissible hearsay evidence. *See e.g. Hutchison v. Bell,* 303 F. 3d 720, 743 (6th Cir. 2002). In addition, petitioner has offered no basis for concluding that disclosure of these statements would have led to the discovery of other admissible evidence that could have been used to prove that another suspect committed the shootings. *Id., See also Bradley v. Nagle,* 212 F. 3d 559, 567 (11th Cir. 2000).

Secondly, it is not clear that the alleged statements made by Terron Johnson to Willie Meadows and Calvin Jones about his involvement in the shooting would have been admissible into evidence at petitioner's trial. When a statement against interest of a witness unavailable to testify at trial is offered to exculpate an accused in a criminal

19

case, there are three requirements under F.R.E. 804(b)(3) for its admission:

1.  the declarant must be unavailable to testify;
2. the statement must subject the declarant to real criminal liability; and
3. corroborating circumstances clearly indicate the trustworthiness of the statement.

*United States v. Price,* 134 F. 3d 340, 347 (6th Cir. 1998); *United States v. Hilliard*, 11 F. 3d 618, 619 (6th Cir. 1993).

M.R.E. 804(b)(3) imposes the same requirements as F.R.E. 804(b)(3) for the admission of such statements.

As the Eighth Circuit has noted: "[a] statement by one criminal to another criminal (translated by the second criminal to a third criminal) about a heist the first criminal allegedly pulled off is more apt to be jailhouse braggadocio than a statement against his criminal interest." *See United States v. Seabolt,* 958 F. 2d 231, 233 (8th Cir. 1992). Willie Meadows even described Terron Johnson as having bragged about the shooting. In addition, any undisclosed statements made to inmates would most not likely be material, for *Brady* purposes, in light of the suspect credibility of such witnesses. *See e.g. Hopkinson v. Shillinger,* 781 F. Supp. 737, 746-47 (D. Wyo. 1991). Finally, petitioner has pointed to no evidence linking Terron Johnson to this crime. The failure to disclose evidence of other suspects is not material where there is no direct or circumstantial evidence linking the third persons to the crime. *See Coleman v. Calderon,* 150 F.3d 1105, 1116-17 (9th Cir. 1998); *rev'd on other grounds,* 525 U.S. 141 (1998); *cert. denied*, 525 U.S. 1058 (1998). The reliability of Terron Johnson's alleged

20

confession is further called into question by the fact that some of the other witnesses claim that they saw a man named Cody Johnson fleeing from the crime scene, as well as petitioner's own trial testimony, in which he testified that his brother and some unidentified person committed the murders.

Thirdly, although the various witness statements indicate that one of the perpetrators of the crime may have been either Terron Johnson or Thames Hawkins, none of these statements conclusively rule out petitioner being the one of the two persons involved in the robbery and shootings on Neland Street. Because none of these witness statements positively identify the other person who assisted either Johnson or Hawkins with the shooting, these statements would not have been particularly exculpatory. *See Harbison v. Bell,* 408 F. 3d 823, 835 (6th Cir. 2005). Indeed, Miss Pettaway could not identify either person that she claimed to see fleeing the scene of the shooting.

Finally, in light of the compelling evidence against petitioner in this case, the undisclosed evidence does not create a reasonable doubt that would not otherwise have existed. *Harbison,* 408 F. 3d at 834. In particular, petitioner's confession to the murders is strong evidence of his guilt, which this new evidence is unlikely to overcome. *Id.*

Finally, in light of petitioner's confession, in which he admits to using a .38 caliber weapon during the murders, as well as his own trial testimony, in which he admitted that one of the guns used in the shooting belonged to him, petitioner has failed

21

to show that any statements from Carl Powell and Trent Chambliss about certain weapons being in the possession of other persons at the time of the shooting would have been exculpatory.  Accordingly, the Court will deny petitioner relief on his second and third claims.

### C.  Claims # 4 and # 5.  The ineffective assistance of counsel claims.

In his fourth claim, petitioner alleges that his trial counsel was ineffective for failing to for failing to discover and present the testimony of the witnesses whom he claims the police withheld from the defense.  In the part of his fifth claim that is not time-barred, petitioner claims that appellate counsel was ineffective for failing to present this claim on his appeal of right.

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984) established a two-prong test to evaluate claims of ineffective assistance of counsel pursuant to the Sixth Amendment.  First the petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and thus was deficient.  *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*.  Second, petitioner must show that the deficient performance prejudiced his defense.   To satisfy the prejudice prong, petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.  The *Strickland* standard applies as

22

well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

The standard of prejudice for an ineffective assistance of counsel claim is the same as the materiality requirement for a *Brady* claim. *See Hutchison v. Bell,* 303 F. 3d at 749.  In light of the fact that this Court has already determined that the undisclosed evidence in this case was not material under *Brady,* petitioner is unable to show that he was prejudiced by trial counsel's failure to discover or utilize this evidence or by appellate counsel's failure to raise the *Brady* claim on appeal.  Petitioner is not entitled to habeas relief on his fourth or fifth claims.

### Claim # 7.  The cumulative errors claim.

Petitioner lastly raises a cumulative errors claim.  Petitioner's claim fails because cumulative error is not a basis for granting habeas relief in non-capital cases. *See Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002).

## IV.  <u>CONCLUSION</u>

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a

different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V.   **ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner will be **DENIED** leave to appeal *in forma pauperis.*

24

s/Paul D. Borman

PAUL D. BORMAN

UNITED STATES DISTRICT JUDGE

Dated:  February 10, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 10, 2006.

s/Jonie Parker

Case Manager

25